## Etter and Snyder *versus* Greenawalt.

1. Where a person accepts a devise which is coupled with a direction by the testator that a sum certain shall be paid by the devisee to a third party, he thereby becomes subject to a personal liability to pay said sum, which may be enforced against him in an action of debt instituted by said third party.

2. The Statute of Limitations will, in such case, preclude recovery against the devisee where more than six years has elapsed since the death of the testator before suit is brought.

3. Where the plaintiff in such case is, at the time of testator's death, under coverture or other disability, he or she may institute suit and recover at any time within six years after the removal of the disability.

June 17th 1881.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Franklin county:* Of May Term 1881, No. 187.

This was an action of debt, brought February 2d 1880, by Susanna Etter and Nicholas Snyder and Eliza, his wife, in her right, against Henry Greenawalt.   The narr. contained the usual money counts, and a special count, setting forth that by reason of the defendant, having accepted a devise under a clause of the will of Godfrey Greenawalt, deceased (quoted below), he became indebted to the plaintiffs, &c.   Pleas, payment, payment with leave, and "that defendant is not indebted to the plaintiffs in the manner charged," and the Statute of Limitations.

On the trial, before ROWE, P. J., the following facts appeared: Godfrey Greenawalt, the father of the plaintiffs, Mrs. Etter and Mrs. Snyder, and of the defendant, by his will, dated and proved in 1847, devised as follows:

"I do also devise to my said son Henry, my undivided half part of the piece of land in the same township (Hamilton), known as the Palmer tract, containing in all about forty-one acres, for which devise I will and direct that Henry shall pay in equal proportions to my two married daughters Susannah Etter

and Eliza Snyder (for their own separate and exclusive use), at at the rate of $20 per acre—the same to be paid in four equal annual installments, the first of which is to become due and payable at the expiration of five years after my decease."

Henry Greenawalt accepted the devise.

The plaintiff, Susannah Etter, is a widow, her husband having died in 1871. The plaintiff, Eliza Snyder, is still a married woman.

The defendant alleged that he had paid $200 to each of the plaintiffs in annual installments according to the terms of the devise, and offered in evidence certain receipts alleged to have been signed by the plaintiffs, by their marks, therefor. The plaintiffs admitted receipt of the $200, but alleged that it was for a compromise in a collateral matter, and that they were ignorant of their rights under the will. The evidence on this subject was, however, weak. The defendant being unable to prove the execution of the receipts, they were, with one or two exceptions, excluded.

The defendant submitted the following point: "The right of action is this case not having accrued within six years next before the bringing of the same, the plaintiffs cannot recover." The court reserved this point, and submitted the case to the jury on the question of payment.

Verdict for the plaintiffs for $1,089.69. The court subsequently entered judgment on the reserved point for the defendant, non obstante veredicto. ROWE, P. J., filed the following opinion:

"On the trial the counsel for the defendant submitted this point: That the right of action in this case not having accrued within six years next before the bringing of the same, the plaintiffs can not recover; which was reserved. The action is for a legacy, but not against an executor.

"Godfrey Greenawalt, by his will dated September 29th 1847, and probated December 6th 1847, devised to his son Henry (the defendant) a tract of land 'for which latter devise, I will and direct that Henry shall pay in equal proportions to my two married daughters, Susanna Etter and Eliza Snyder, for their own separate exclusive use, at the rate of $20 per acre, the same to be paid in four equal annual installments, the first due and payable at the expiration of five years after my decease.'

"Henry Greenawalt was appointed executor of the will, and took out letters testamentary. He also immediately accepted the above devise and took possession of the land.

"The plaintiffs lived in the same town with the testator and the devisee, knew of the death of their father and of the will recorded, and within a few weeks after his death employed

[Etter *v.* Greenawalt.]

Joseph Chambers, Esq., attorney at law, to read the will and protect their interests. They lived in the county town, and knew the will was on record in the register's office in that town.

"At the death of the testator both were covert. The husband of Mrs. Etter died more than six years before this action was brought; the husband of Mrs. Snyder is still alive.

"Now, it is agreed that this is not a legacy charged on land, and it is also agreed that the fact that Henry Greenawalt the devisee happened to be also executor does not complicate the question.

"We have then the simple case of a devise of land to A. with a direction that he pay B. a sum of money, and an acceptance of the land by A.

"By acceptance Henry Greenawalt undertook to pay the legacies, which undertaking or assumpsit arose 'from the general implication, and intendment of the courts of judicature that every man hath engaged to perform what his duty or justice requires': Miltenberger *v.* Schlegel, 7 Barr 241. The foundation of the action is the acceptance of the devise and the implied promise which arises thereupon. It is therefore an action of debt grounded on a contract, without specialty. But the contract is an implied one, and it is said that the statute of limitations is not a bar to an action of debt on an implied contract; even though if the action were assumpsit for the same cause, the statute would be pleadable : Richards *v.* Bickley, 13 S. & R. 399, is relied on, and the remarks of Mr. Justice Duncan give color to this contention, and it is thought it receives some support Railway Co. *v.* Moore, 14 P. F. Smith 89.

"But debt in simple contract lies where indebitatus assumpsit lies : Arch. N. P. 201 ; and actions of assumpsit are included in the statute. If one brings an action of assumpsit on an implied contract, the statute may be set up. May he, by electing debt, deprive the defendant of that benefit? In the Master, &c. *v.* Loder, 16 Queen's Bench 745 (E. C. L. R. 779), the action was debt, but because assumpsit would lie for same cause, the statute was held a bar, in a case of implied contract. And at length in our own case of Wickersham *v.* Lee, 4 W. N. C. 44, it was held that it is the cause of action rather than the form of action which determines the applicability of the statute, and that the Statute of Limitations is a bar to an action of debt founded on an implied contract not begun within six years.

"Wilson *v.* Towle, 19 N. H. 244, is said to hold that debt against a devisee of land to recover money *charged* thereon, is not an action grounded on any lending or contract not under seal: see U. S. Digest VIII, 839, pl. 1317 ; Angell on Limitations

[Etter *v.* Greenawalt.]

§ 76.   I have not the case, but no doubt the statute is not applicable where a legacy is charged on land.

But it is contended that the statute does not apply to an action for a legacy, and I am referred to Thompson *v.* McGaw, 2 Watts 161; Dœbler *v.* Snaoeley, 5 Watts 225; Patterson *v.* Nichol, 6 Id. 379.   These cases show that the statute is not pleadable in case of an ordinary action *against an executor* for a legacy.   This is because the executor is a trustee for the legatee by express trust.   Now the relation between the devisee and the legatees in our case is not that of trustee and cestuis que trustent, but that of debtor and creditor: Cowden v. Oyster, 14 Wright at page 373.   'Having taken the land at the valuation, they became *debtors.*'   Or if there be any trust it is only an implied or constructive one which the statute will bar: 1 W. 271; 12 Wr. 518; 16 S. & R. 379; Ashhurst's Appeal, 10 P. F. S. 290.   It was hinted that there may be an *implied condition* that the devisee shall pay the money; but that would make the legacies a charge on the land, recoverable only in the orphans' court, and not by this action.

"It is not because the legacy is a legacy, or because the liability of the defendant arises *upon a will,* that it has been held the statute does not apply.   For immediately that the *trust* is ended the statute begins to run: App *v.* Dreisbach, 2 Rawle 287, 304; Patterson *v.* Nichol, 6 W. 381; Young *v.* Cook, 30 Miss. 320, cited Angell on Lim. 90.   And where the executor may be held at law, that is in some courts held sufficient to bar a claim for a legacy after six years: Smith *v.* Remington, 42 Barb. 75; Kane *v.* Bloodgood, 7 Johns. Ch. 90; 12 Am. Dec. 433; Souzer *v.* De Meyer, 2 Paige Ch. 577.   Now all this shows that the statute would apply to a legacy, were it not set up by a trustee.   In Thompson *v.* McGaw, four reasons are given why the plea of the statute to an action for a legacy cannot be interposed. 1st. Because debt for legacy is not grounded on any lending or contract; which, as applied to our case of a devisee, is not tenable, as we have seen.   2d. Because an executor is a trustee, which is a valid reason—but the defendant is not an executor. 3d. Because the legatee may be *ignorant of the bequest,* or *absent* in other states.   But here the legatees knew of the will and lived in the same town, and with reasonable diligence might have known of the contents of the will.   Besides, mere want of knowledge that one has money due another and that the statute is running, in the absence of concealment and fraud, is not enough: Downey *v.* Garard, 12 H. 52; Campbell *v.* Boggs, 12 Wr. 524; Rhine *v.* Evans, 16 P. F. S. 192; Barton *v.* Dickens, 12 Wr. 523.   I think the fact·that the legatee was ignorant of his legacy, if it may be an answer to the plea of the statute in a

given case, ought not to prevent the setting up of the statute in every case.   The fourth reason is that, if acquainted with the fact of the bequest, he is not bound to *demand* his legacy within the statutory period, and this reason is much insisted on in Patterson *v.* Nichol.   But in the case of a devisee who has become liable to pay a legacy by acceptance of a devise, a demand is not necessary before suit : Zacharias *v.* Zacharias, 11 H. 455.   And when a demand is necessary the plaintiff must make it in season, and cannot take advantage of his own fault : Campbell *v.* Boggs, 12 Wr. 526.)

"I think, on the whole, the statute of limitations is a bar to an action of debt for a legacy against a devisee of land simply.

"But I have still to consider whether the fact that Mrs. Snyder, one of the plaintiffs, was a feme covert during the whole period since the death of the testator, is an answer to the plea of the statute as to her.   And I am of opinion that it is not.

"In Maine, since the statute authorizing a married woman to sue as a feme sole, it is held that the disability of coverture is abrogated : Brown *v.* Cousens, 51 Maine 301 ; Angell on Lim. § 192, n.1.   The same is held in Texas : Thompson *v.* Craig, 24 Texas 582.   'The exception contained in the statute of limitations is to be regarded as inoperative so far as regards married women, they being no longer under any disability as to suing or defending actions.'   Now it has been said in several cases, that in Pennsylvania, since the Act of 1848, a feme covert can maintain a suit in her own name alone.   It was so ruled by Mr. Justice BURNSIDE at Nisi- Prius in Boileau *v.* Bute.   And in Goodyear *v.* Rumbaugh, 1 Harris, 480, the Supreme Court agreed with him in this view.   In Sheidle *v.* Weishlee, 4 H. 134, 138, LEWIS, Prest. J. below, and perhaps the Supreme Court, on error, held the same opinion.   On the other hand, it is said in Keeney *v.* Good, 9 H. 349, 356, and in Ritter *v.* Ritter, 7 Casey 396, 400, that the husband should be joined.   I do not think that the very point was presented for decision in any one of these cases ; for even in Ritter *v.* Ritter the decision goes no further than this, that a married woman cannot, by her next friend, sue *her husband*.   I do not see that the question is concluded by authority.   On the cases I have cited, with Miller *v.* Miller, 8 Wr. 170, and the Act of 1850 (Purdon, 1007, pl. 20), and the Act of 1856 (Purdon, 1009, pl. 31), which furnish, so far as I know, all the materials at hand for a judgment, I find considerable difficulty in saying that a married woman may sue alone.

"If she is empowered to do so, then the case in Maine shows that she can no longer avail herself of the exception in the statute.   But if she must join her husband, still he is joined

[Etter *v.* Greenawalt.]

merely for conformity and is only a nominal plaintiff, cannot dissent to the use of his name, and has no control over the action : Bowler *v.* Titus, 2 W. N. C. 184. If this is so as to the legal separate estate created by the Act of 1848, much more is it so as to the old equitable separate estate. And it is with the latter we have to do. For the testator died in 1847, and gave his money to his two married daughters, for their sole and separate use.

" Now in equity, a married woman is looked upon as to her separate personal property as a feme sole, and as acting without coercion : Reeves Dom. Rel. 3d Ed. 262 (*p. 166), 271, note 2. It is here said, she sues in the name of her husband, and herself, if he do not refuse to have his name used ; if he will not lend his name, she may sue by prochein ami. The reason is, that the opposite party may have security for costs : Ib. 271. But Mr. Daniel says (Daniel's Ch. Pr. 3d Am. Ed. 1, 104, 105) : ' In general, when the suit relates to the separate property of the wife it is necessary that the bill should be filed in her name by her prochein ami.' She may, in some circumstances, sue her husband : Ib. ; and Reeves Dom. Rel. 271 ; and even in her own name. Our courts proceed upon the principles of equity, and when a wife sues to recover her equitable separate property, though in a common law form, and for conformity joints her husband, he would not be allowed to dissent.

" Then, the exception in the statute does not forbid her to sue for her *separate* property during coverture, does not require her to await the death of her husband : Angell on Lim. § 195 ; and if she join him in the action, the defendant could not on that account plead the statute —for the recovery could not be for his use—though it is otherwise when the property is not her separate estate : McDowell *v.* Potter, 8 Barr 189, 193.

Seeing then that a wife, with respect to her equitable separate personal estate is treated as a feme sole ; that if it is necessary to join the husband it is a mere formal thing ; that the wife can sue during coverture ; and that there is no real defect of capacity as there is in cases of infancy and lunacy, I next wish to point out the great change in the status of a married woman with regard to her property since the 21 of James II., and the passage of our own act of limitations in 1713. Then all her personal property which she had before marriage and all that accrued to her during coverture, and all the profits of her real estate, became her husband's. Whilst covert, what had she to sue for at law ? The law gave everything to her husband, leaving her not enough even to pay costs. Her very existence was regarded as merged in his. Then, she could not recover her own personal property by action during

[Etter *v.* Greenawalt.]

coverture, but must await the death of her husband ; because she must join him in the action, and then the defendant could plead the statute, even when the husband did not wish to reduce her property into possession : McDowell *v.* Potter, 8 Barr 189. Now, all this is changed.

"It is true that at that time she might have an equitable, separate estate. But in England it was only in courts of equity she could enforce her rights in respect thereof, and the statute applied only to actions at law and not to suits in equity : Angell on Lim. § 26. Equity, however, adopted the analogy of the statute in similar cases, and no doubt, in a case of a simple contract debt, would have held a man barred after six years : Knox *v.* Gye, 5 L. R. H. of L. Cases, 656. And I think would have held a wife also barred, who sued for her separate estate, because she could sue at any time, and without her husband, or at least without his consent. Not being under any disability to sue in equity, why should the court give effect to the exception in the statute in her favor founded only on such disability ?

"In 1713 we adopted the statute. We had no court of equity. The husband and wife joined in an action at law for the separate property of the wife, but the principles of equity governed. The recovery was for the use of the wife, nor can it be doubted that he would not have been allowed to control the action or dissent from the bringing of it. The court would have protected the wife's right as fully as a court of equity. While, then, the action of debt, for example, by the wife for her separate property fell within the Act of 1713, within its terms and the mischief it was intended to remedy, her case was not in fact within the mischief intended to be guarded against by the exception to the act—for she was not in fact as to her separate property under any disability to sue. The statute of limitations is a statute of peace and repose—and a defendant ought not to be deprived of the benefit of it, by the mere technical need of joining a husband with his wife in an action at law. Aside from that technical legal requirement, the case in Maine shows that Mrs. Snyder is not within the exception to the statute, and that the lapse of twenty-five years is a bar to her recovery. If that case is good law it is the disability to sue that the exception meant to cover in the case of a married woman, not her general disability from coverture—for in that state she is of course under her general disability. At the time the statute was passed, confined as it was to actions *at law*, where separate estates were not recognizable, the disability to sue and of coverture were the same.

"I am of opinion that the defendant's point ought to have been affirmed.

" Let judgment be entered for the defendant notwithstanding the verdict.

The plaintiffs took this writ, assigning for error, the entering judgment for defendant on the point reserved, non obstante veredicto.

*J. McD. Sharpe* and *Stenger & McKnight,* for the plaintiffs in error.—There is no contract relation in fact between plaintiffs and defendant, and it is only where such relation exists that the Statute of Limitations applies. If any contract relation exists here it arises by operation of law, from the acceptance of the devise. The statute only applies to " actions of debt grounded upon any lending or contract without specialty." This action is grounded on the will, and is not within the scope of the statute. The will simply designated the defendant as the paymaster of the legacy, and the law, not " any contract without specialty," makes him liable to pay, on accepting the devise: Wilson *v.* Towle, 19 N. H. 246; Richards *v.* Bickley, 13 S. & R. 395; Pease *v.* Howard, 14 Johns. 479.

Suppose Henry Greenawalt had not accepted the devise, he would not have been liable, but the devise would have fallen into the residue, and the plaintiffs would have been paid their legacies by the executor. Thus the foundation of the claim is the will. The statute of limitations does not apply to a legacy or to a suit for a legacy: Summerville *v.* Holliday, 1 Watts 513; Thompson *v.* McGaw, 2 Watts 161; Dœbler *v.* Snavely, 5 Watts 255.

But, in any event, the statute cannot apply to Mrs. Snyder, a married woman at the time the will took effect and ever since. The proviso in the statute excluding femes covert from its operation has never been repealed, and the theory of an implied repeal, because since the Act of 1848, a feme covert may, in some cases, sue at law, is too argumentative and fine-spun to sweep away her statutory privilege. An infant may sue by prochein ami, but he is not thereby barred of his privilege.

*Kennedy & Stewart,* for the defendant in error.—This suit was brought more than twenty years after the right of action accrued. We defended on the ground of actual payment in full, but by reason of the death of witnesses failed in our proof, and then fell back on the Statute of Limitations in aid of our meritorious defense.

The foundation of the action is the contract of the defendant, on accepting the devise, to pay the legacy. It was optional on his part to accept or refuse the devise, but by accepting he assumed the debt.

This is not an action for a legacy as such, for it is not against an executor, and the rule that the statute does not run against a legacy does not apply.

Since the disability of married women to enforce their rights by suit has been removed by the Act of 1848, the reason of their exemption from the running of the statute is removed, and the exemption falls also: Castner *v.* Walrod, 38 Ill. 171; Brown *v.* Cousens, 51 Me. 301; Thompson *v.* Craig, 24 Texas, 582.

Mr. Justice GREEN delivered the opinion of the Court, October 3d 1881.

This was an action of debt brought against the defendant by his two sisters, one of whom was a widow and the other a married woman. The, right of action upon which the suit, was founded was an alleged liability of the defendant to pay to his sisters, the plaintiffs, a sum of money which he was directed by his father's will to pay to them in consideration of a tract of land devised by the will to him. The language of the will as to the payment of the money, is, "*for which devise,* I will and direct that Henry shall pay in equal proportions to my two married daughters, Susannah Etter and Eliza Snyder (for their own separate and exclusive use), at the rate of twenty dollars per acre, the same to be paid in four equal annual installments, the first of which is to become due and payable at the expiration of five years after my decease." The testator died in December 1847, and the action was not brought until 1880. The only question brought here is, as to the effect of the plea of the statute of limitations, which was sustained by the court below, as to both the plaintiffs. Mrs. Etter became *discovert* in February 1871 by the death of her husband. Mrs. Snyder is still *covert* and her husband has joined in the suit. The case was argued and decided in the court below, upon the concession, that this is not the case of a legacy charged on land, and that an action of debt was therefore the proper remedy. As the payment of the money to the sisters was apparently, under the peculiar phraseology of the will, in part at least, the *consideration* of the devise to the defendant, we are not prepared to assent to the correctness of the concession. But that question is not before us, and therefore we forbear either its decision or its discussion. On the general question of the application of the statute of limitations to the liability of the defendant, we concur with the learned court below in holding that the obligation of the defendant is subject to the operation of the act. By accepting the devise he agreed to pay the sum given to his sis-

[Etter v. Greenawalt.]

ters, according to the terms of the will. That agreement is an implied contract without specialty, and is therefore within the letter of the Act of 1713. All the cases hold that when the devisee accepts the land in such circumstances, he thereby agrees to pay the money which he is by the will directed to pay. He becomes subject to a personal liability to pay, and that too, whether the money is charged on the land or not. Thus in Brandt's Appeal, 8 Watts, on p. 202, we said : " If the sons accepted the lands devised, they became personally liable to pay the legacies, at the times, and in the payments, directed by the will : if not paid, the legatees could sue and recover them by levy and sale of any goods or lands of the devisees." In Lobach's Case, 6 Watts, 167, we held that the acceptance of a devise of land charged with the payment of a legacy, creates a personal liability for its payment on the part of the devisee. On p. 170, KENNEDY, J., speaking of the effect of the acceptance of the land by the devisees, said : " This, perhaps, without more, ought to be considered sufficient evidence, in ordinary cases, to establish an agreement on the part of the devisees to take the lands devised to them upon the terms and conditions set forth in the will ; and likewise of an engagement on their part to fulfill and perform them, whatever they may be." See also Miltenberger v. Schlegel, 7 Barr on p. 243, and the cases there cited. Now an engagement, undertaking, or agreement to pay, is essentially a contract to pay. Such certainly is its status in legal contemplation. The law recognizes and enforces the obligation, and it can only do so upon the footing of a contract. The terms of such contracts as the present are found in the will, and the obligation to comply with those terms is implied from the acceptance of the devise. We do not consider it is any reply to the plea of the statute, to say that this is an action for a legacy, and in such cases the statute is not a bar. That is true in the ordinary actions for legacies against executors, and the reason is that the liability of an executor to pay a legacy is not grounded upon any lending or contract. He is a trustee who is charged by the will with the performance of the duty of paying legacies, and against that form of obligation the statute of limitations is no bar. The case of Thompson v. McGaw, 2 Watts, 163, cited for the plaintiffs, is decided upon that very ground. We are therefore of opinion that the plea of the statute is a good bar to the cause of action set up in the present case. As Mrs. Etter was sui juris more than six years before suit brought the defence was good as to her.

But the case of Mrs. Snyder stands upon a different footing. She was a married woman at all times since her legacy became due, and she is still married. The learned judge of the court

[Clow to use, &c. *v.* Derby Coal Co.]

below thought that she could not take advantage of the exception in favor of married women in the Act of 1713, and that the plea of the statute was a good bar to her claim also. His reasoning is certainly very forcible if the proposition were as to how the law *ought* to be in such cases. But we must confront the positive terms of a statute directly and literally applicable to the case, and here we consider there is no alternative. The language of the third section of the Act of 1713 is most explicit, and it provides in express terms that several classes of persons under disabilities are not barred by the statute until six years after they have recovered their ability. These persons are, those who are " within the age of twenty-years, feme covert, non compos mentis, imprisoned or beyond the sea." The privilege of freedom from the liability to the statute is common to them all. No one of the classes is more or less entitled to the exemption of the third section than any other. This statutory exemption has never been repealed expressly or by implication. It is the law of the Commonwealth at this day, and we must respect it. The plaintiff, Mrs. Snyder, comes directly within its terms and is entitled to its benefits. As to her, therefore, the plea of the Statute of Limitations is no bar and it is overruled.

The judgment in favor of the defendant as against the plaintiff, Susannah Etter, is affirmed. The judgment in favor of the defendant as against the plaintiffs, Nicholas Snyder and Eliza his wife, in right of the said Eliza, is reversed, and as to them a writ of venire facias de novo is awarded.